UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| FIRST STATE TRUST COMPANY, | Case No. 2:20-cv-11612 |
| Plaintiff, | HONORABLE STEPHEN J. MURPHY, III |
| v. | |
| WILLIAM F. WELD, | |
| Defendant. / | |

**OPINION AND ORDER DENYING FIRST STATE'S
MOTION TO DISMISS GOVERNOR WELD'S COUNTERCLAIM [12]**

Former Massachusetts Governor William F. Weld asserted a counterclaim in response to the complaint. ECF 11, PgID 78–83. First State Trust Company ("First State") then moved to dismiss the counterclaim under *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976). ECF 12. Weld opposed the motion. ECF 14. The Court reviewed the briefs and finds that a hearing is unnecessary. *See* E.D. Mich. LR 7.1(f). For the following reasons, the Court will deny First State's motion to dismiss the counterclaim.

### BACKGROUND

The present case involves three contracts: a promissory note, a security agreement ("Pledge Agreement"), and an assent to the Pledge Agreement ("Assent"). For the first contract, Governor Weld signed a two-million-dollar promissory note to First State. ECF 1, PgID 2–3; ECF 1-1; ECF 11, PgID 75–76. For the second contract, Weld allegedly signed the Pledge Agreement that granted First State a security

1

interest in Weld's "present and future interest(s) as a member or other equity holder" in a limited liability company ("LLC"). ECF 11-2, PgID 87. Michigan law governs both the promissory note and the Pledge Agreement. ECF 1-1, PgID 8; 11-2, PgID 92.

For the third contract, the LLC and Weld allegedly signed the Assent that essentially consented to Weld granting a security interest in his LLC membership stake to First State. ECF 11, PgID 79. Delaware law governs the Assent. ECF 11-3, PgID 98.

But Weld recently sued the LLC in Delaware Superior Court and alleged that the LLC "lacked the authority to enter into" the Assent. ECF 11, PgID 80–81. Weld sought a declaratory judgment that the Assent is void and unenforceable. ECF 11, PgID 81; ECF 11-3.

Shortly after, First State filed the present complaint against Weld for breach of the promissory note. ECF 1. In response to the complaint, Weld asserted a counterclaim. ECF 11. The counterclaim sought only declaratory judgment under 28 U.S.C. §§ 2201, 2202 that the Pledge Agreement is void, invalid, and unenforceable because the Assent is also void and unenforceable. *Id.* at 78–83.

## LEGAL STANDARD

"Federal courts are courts of limited jurisdiction. . . ." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citations omitted). Federal Rule of Civil Procedure 12(b)(1) allows dismissal for "lack of subject-matter jurisdiction." When a party challenges subject-matter jurisdiction, the nonmoving party bears the burden of proving jurisdiction. *Mich. S. R.R. Co. v. Branch & St. Joseph Ctys. Rail Users*

*Ass'n, Inc.*, 287 F.3d 568, 573 (6th Cir. 2002) (citing *Moir v. Greater Cleveland Reg'l Transit Auth.*, 895 F.2d 266, 269 (6th Cir. 1990)).

## DISCUSSION

To begin, the Court will discuss First State's abstention argument. Then, the Court will discuss its discretion under the Declaratory Judgment Act.

I. *Colorado River* Abstention

The Court has the power to abstain from exercising its jurisdiction over a case in deference to a parallel state-court proceeding if the abstention will promote efficient resolution of the issues and judicial economy. *Colo. River*, 424 U.S. at 817–18; *Romine v. Compuserve Corp.*, 160 F.3d 337, 339 (6th Cir. 1998). With that in mind, *Colorado River* abstention requires a two-prong analysis.

Under the first prong, the Court must address whether the two proceedings are parallel. *Romine*, 160 F.3d at 340. If the proceedings are parallel, then the Court must weigh the factors described in *Colorado River* to determine whether abstention will promote efficient court administration. *Id.* at 340–41. But the Court need not address the second prong if the Court determines that the proceedings are not parallel. *Baskin v. Bath Twp. Bd. of Zoning Appeals*, 15 F.3d 569, 572–73 (6th Cir. 1994).

To begin, state and federal court cases are "parallel" if they are "substantially similar." *Romine*, 160 F.3d at 340 (citations omitted). Parallel cases generally require both the state and federal cases to present the same theories of recovery. *See Baskin*, 15 F.3d at 572 (finding that state and federal cases "each contest[ing] a different

aspect" of a zoning variance were not parallel). To this end, "a suit will only be 'parallel when substantially the same parties are contemporaneously litigating substantially the same issues in another forum.'" *Walbridge Aldinger Co. v. Aon Risk Servs., Inc. of Penn.*, No. 06–11161, 2006 WL 2376112, at *3 (E.D. Mich. Aug. 16, 2006) (quoting *Interstate Material Corp. v. City of Chicago*, 847 F.2d 1285, 1288 (7th Cir. 1988)).

Under the first prong, First State argued that the Delaware and federal cases are substantially similar despite not involving identical parties. First State is correct, in part; although the cases do not involve identical parties, the parties in the Delaware case need not be identical to the federal case. *Heitmanis v. Austin*, 899 F.2d 521, 528 (6th Cir. 1990) (noting that, under *Colorado River* abstention, it is irrelevant if the parties in a federal case differ from the parties in a state case). But the cases are not substantially similar for three reasons.

For one, the Delaware and the federal cases involve only one common party: Governor Weld. ECF 11-3. In Delaware, the LLC is the defendant. *Id.* And although Weld is a member of the LLC, First State is not. *See id.* at 96; ECF 12, PgID 125, n.1. What is more, the LLC and First State are not the same parties and do not necessarily share the same interests simply because First State may intervene in the Delaware case—something that has yet to happen. *See* ECF 12, PgID 125.

Next, the Delaware and federal cases involve different contracts. In the Delaware case, the parties are litigating the validity of the Assent—a contract between Weld and the LLC. ECF 11-3, PgID 107–09. Meanwhile, the parties in the

4

federal case are litigating the promissory note and now the Pledge Agreement—two contracts between Weld and First State. ECF 1, PgID 4; ECF 11, PgID 79–83. Given that the Delaware and federal claims involve separate contracts and parties, the present case is unlike *Romine* in which both state and federal cases involved federal securities claims between the same parties and law firms. 160 F.3d at 342–43. In short, if the cases were "truly parallel, then the state action [would] . . . resolve all issues raised in the federal action." *Walbridge Aldinger Co.*, 2006 WL 2376112, at *3–4.

Last, the theories of recovery in the Delaware and federal cases are not at all similar. In the Delaware case, Weld is seeking a declaratory judgment that under Delaware law the Assent is void, and, alternatively, if it is valid, then the LLC breached the Assent. ECF 11-3, PgID 98, 110–11. But in the federal case, Weld's counterclaim seeks a declaratory judgment that the Pledge Agreement is void because the Assent is void. ECF 11, PgID 80, 82. Although it may seem like "the counterclaim is *wholly dependent* on the outcome of the Delaware lawsuit[,]" that may not be the case despite Weld's allegations otherwise. ECF 12, PgID 123 (emphasis in original); *see* ECF 11, PgID 82. That said, even if the Assent is void, then the Court still needs to determine whether Michigan law voids the Pledge Agreement just because the Assent is void. *See* ECF 11-2, PgID 87–88, 92 (explaining that Michigan law governs the Pledge Agreement); *see Gentry v. Wayne County*, No. 10-cv-11714, 2010 WL 4822749, at *2–3 (E.D. Mich. Nov. 22, 2010) (Murphy, J.) (finding that two cases were not parallel because the state action raised only state law tort claims and

the federal case raised only federal civil rights claims). Put differently, does Michigan law void the Pledge Agreement because the Assent is void under Delaware law?

Based on those three reasons, the Delaware and federal cases are not parallel. *See Walbridge Aldinger Co.*, 2006 WL 2376112, at *3–4 (concluding that two cases were not parallel because "the existence of different theories of recovery in the federal and state cases militate[d] against a finding of parallelism[.]"). As the Supreme Court held, "*Colorado River* necessarily contemplates that the federal court will have nothing further to do in resolving any substantive portion of the case, whether it stays or dismisses." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 28 (1983). But no matter how the Delaware case ends, this Court will still have to resolve issues of Michigan law. In sum, the Court will decline to abstain under *Colorado River* because the Delaware and federal cases are not parallel.

II.    Discretion under the Declaratory Judgment Act

Although First State accurately stated that any relief for declaratory judgment is discretionary, ECF 16, PgID 250, the Court need not decide whether to grant any relief to Weld at this stage. Instead, the Court will exercise its discretion to hear Weld's declaratory judgment claim.

The Declaratory Judgment Act provides that the Court "*may* declare the rights and other legal relations of any interested party seeking such declaration[.]" 28 U.S.C. § 2201(a) (emphasis added). The Court must weigh five factors[1] to determine

---

[1] The fourth factor has three subfactors. *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 560 (6th Cir. 2008).

whether to exercise jurisdiction under the Declaratory Judgment Act. *United Specialty Ins. Co. v. Cole's Place, Inc.*, 936 F.3d 386, 396 (6th Cir. 2019).

> (1) Whether the declaratory action would settle the controversy;
> (2) whether the declaratory action would serve a useful purpose in clarifying the legal relations in issue;
> (3) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for res judicata;"
> (4) whether the use of a declaratory action would increase the friction between our federal and state courts and improperly encroach upon state jurisdiction; [which is determined by asking]
>> a. whether the underlying factual issues are important to an informed resolution of the case;
>> b. whether the state trial court is in a better position to evaluate those factual issues than is the federal court; and
>> c. whether there is a close nexus between underlying factual and legal issues and state law and/or public policy, or whether federal common or statutory law dictates a resolution of the declaratory judgment action; and
>
> (5) whether there is an alternative remedy which is better or more effective.

*Mass. Bay Ins. Co. v. Christian Funeral Dirs., Inc.*, 759 F. App'x 431, 435 (6th Cir. 2018) (citations omitted). The Court will now address the factors in turn.

### A. Factors One and Two

To begin, the first two factors are "closely related" to one another. *Flowers*, 513 F.3d at 557. "Indeed, it is almost always the case that if a declaratory judgment will settle the controversy, then it will clarify the legal relations [at] issue." *Id.* In other words, "when a declaratory judgment action addresses questions that are primarily legal, and that do not require an intrusive inquiry into issues being developed in state court, it will generally be the case that the declaratory judgment can settle the entire controversy." *United States Fire Ins. Co. v. City of Warren*, No. 10-cv-13128, 2012 WL

7

13006043, at *9 (E.D. Mich. July 25, 2012) (Murphy, J.) (citing *Flowers*, 513 F.3d at 556).

Here, the controversy is about the Pledge Agreement's validity. ECF 11, PgID 78–83. Weld's counterclaim asserted that this Court will only need to determine legal issues. *See id.* at 82 ("If the Delaware Court declares that the Assent is invalid and void . . . then the Pledge Agreement is likewise invalid and void[.]"). Indeed, First State never asserted that a declaratory judgment would fail to settle the controversy over the Pledge Agreement or involve factual issues. The Court therefore finds that the first and second factors favor exercising jurisdiction.

### B. *Factor Three: Procedural Fencing*

Next, the Court examines "whether the declaratory plaintiff has filed in an attempt to get [his] choice of forum by filing first." *AmSouth Bank v. Dale*, 386 F.3d 763, 789 (6th Cir. 2004). This is a concept known as "procedural fencing." But Weld's counterclaim was not an attempt at procedural fencing for two reasons. First, Weld did not file the federal lawsuit; First State did. And Weld merely filed a counterclaim. ECF 1. Second, the Pledge Agreement's terms included a forum-selection clause that required all litigation to take place in Michigan state courts or before this Court. ECF 11-2, PgID 92. The third factor therefore supports exercising jurisdiction.

### C. *Factor Four: Increased Friction Between Federal and State Courts*

The fourth factor also warrants exercising jurisdiction. As the Court already explained, Weld's counterclaim does not appear to involve any fact development. Nor

8

does the counterclaim appear to involve any important state policy questions. These two subfactors therefore warrant exercising jurisdiction.

For the last subfactor, although Michigan state courts are the preferred fora for resolving disputes about state law, the Court is not "unfit to consider them[.]" *Flowers*, 513 F.3d at 560. Moreover, neither party has asserted that the issue under Michigan law is complex. Instead, the complex legal issue appears to be whether the Assent is void under Delaware law. ECF 11-3, PgID 98, 110. But the Court need not decide any Delaware legal issue because a Delaware Court is already reviewing those issues. ECF 11, PgID 81; ECF 11-3. In short, the fourth factor warrants exercising jurisdiction.

### D. Factor Five: Availability of Alternative Remedy

Last, the fifth factor easily favors exercising jurisdiction. First State never suggested that Weld had any alternative remedies to determine his rights under the Pledge Agreement. In fact, given the forum-selection clause, Weld could only bring a legal action under the Pledge Agreement in Michigan state courts or before this Court. ECF 11-2, PgID 92. But hearing the claim in a Michigan state court would undermine judicial economy because the parties are already before this Court to resolve the alleged breach of the promissory note. *See Flowers*, 513 F.3d at 562 (noting that the state courts could have "combine[d] the two actions so that all issues could be resolved by the same judge"). In the end, all five factors warrant exercising jurisdiction over Weld's counterclaim for declaratory judgment. The Court will therefore deny First State's motion to dismiss the counterclaim.

Finally, to promote "efficiency, fairness, and federalism[,]" the Court will exercise its discretion to stay Weld's counterclaim pending a judgment in the Delaware case. *W. World Ins. Co. v. Hoey*, 773 F.3d 755, 759 (6th Cir. 2014); *see Wilton v. Seven Falls Co.*, 515 U.S. 277, 288 (1995) (explaining that the Court has the inherent discretion "to stay or dismiss an action seeking a declaratory judgment"). Because Weld's claim for declaratory judgment alleged that a decision from the Delaware court controls whether the Pledge Agreement is void, ECF 11, PgID 82, the Court finds that it is not only practical but also "wise judicial administration" to stay Weld's claim until after the Delaware case concludes. *Wilton*, 515 U.S. at 288 ("In the declaratory judgment context, the normal principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration."). The Court will therefore stay the counterclaim pending a judgment in the Delaware litigation. Because of the stay, First State need not answer the counterclaim until after the Court lifts the stay. But the parties must promptly inform the Court after the Delaware court issues a judgment.

## ORDER

**WHEREFORE**, it is hereby **ORDERED** that First State's motion to dismiss Governor Weld's counterclaim [12] is **DENIED**.

**IT IS FURTHER ORDERED** that Governor Weld's counterclaim [11] is **STAYED**.

**IT IS FURTHER ORDERED** that the parties must **SUBMIT** a joint status report detailing the disposition of the Delaware case **seven days** after the Delaware court issues a judgment.

**SO ORDERED.**

s/ Stephen J. Murphy, III
STEPHEN J. MURPHY, III
United States District Judge

Dated: November 18, 2020

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on November 18, 2020, by electronic and/or ordinary mail.

s/ David P. Parker
Case Manager
